IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LOURDES SANTOS-REYES,                      No   C  05-4550  VRW

        Plaintiff,                          ORDER

        v

ALBERTO R GONZALES, United States
ATTORNEY GENERAL,

        Defendant.
_____/

        This case involves claims of employment discrimination and retaliation against plaintiff's former employer the Federal Correctional Institute in Dublin, California (FCI-Dublin).  Doc #1. Defendant moves for summary judgment on each of the discrimination and retaliation claims.  Doc #26.

        Plaintiff in pro se alleged seven claims against her former employer FCI-Dublin.  See Doc #1.  Now represented by counsel, plaintiff focuses her efforts on only two of these claims. See Doc #42.  While government counsel inappropriately asserted that plaintiff "conceded all but two claims" of the seven asserted

in her complaint, see Def Reply Br, Doc #48 at 1, 6, where in fact plaintiff's counsel merely failed to argue all but two claims – a distinction not without a difference – plaintiff's counsel at oral argument acknowledged that he was abandoning all but the sixth and seventh claims of the complaint.  These allege claims for hostile work environment under the Rehabilitation Act and for disability discrimination under Title VII.  Both claims arise from the same set of facts and therein lies plaintiff's difficulties.  Although afforded remedies through grievance and mediation procedures, plaintiff failed to see these through and thus her claims are barred.

I

Plaintiff, a female of Filipino descent, began working as a physician's assistant at FCI-Dublin in 1987 and continued in this capacity until 1989.  Doc #43 at 1; Doc #1 at 1-2.  In April 1994, after completing her residency, plaintiff was hired by FCI-Dublin as a physician/medical officer.  Doc #43 at 1.  FCI-Dublin is a correctional institution primarily for female prisoners that houses approximately 1,400 inmates, around 700-800 of whom are located within the "chronic care" unit.  Doc #51 at 2.  Plaintiff worked under the supervision of Dr Tracy Thompson from April 1994 until around October 1999.  Doc #27, Ex C at 24; Doc #26 at 3.  Plaintiff received positive written job performance reviews from Thompson. Doc #43 at 2.  In the time between Thompson's departure and the hiring of a new clinical director, plaintiff was supervised by Dr Marcus Pang.  Doc #27, Ex C at 25; Doc #26 at 3.  No negative performance reviews were recorded during this period either.  In

January 2000, Dr Belen Ezaz, a female of Filipino descent, was hired as the new clinical director and began supervising plaintiff and Pang. Id. It is the relationship between plaintiff and Ezaz that triggered the present suit.

Plaintiff alleges that Ezaz began harassing her and discriminating against her almost immediately after becoming clinical director. Doc #1 at 2. Plaintiff specifically alleges that Ezaz gave her unwarranted negative job performance reviews (id; Doc #42 at 2); that Ezaz assigned plaintiff a greater number of difficult, or "chronic care," patients than she assigned to Pang (Doc #42 at 3); and that Ezaz yelled at plaintiff in front of other staff and inmates regularly, but did not do the same to Pang. Doc #42 at 2; Doc #1 at 2.

After Ezaz assumed her position as clinical director, plaintiff took leave from work on several occasions, including from August 30, 2000, to February 14, 2001 (Doc #43 at 2; Doc #26 at 6); from July 10, 2001, to February 14, 2002 (Doc #43 at 3; Doc #26 at 6); and from April 8, 2003, until her termination on November 6, 2003. Doc #43 at 6; Doc #26 at 6. Plaintiff asserts that each leave was the result of depression caused by Ezaz's harassment and discrimination. See Doc #43 at 2-3, 6. Plaintiff began to see Dr Harvey Widroe in August 2000 for depression. He prescribed a number of medications. Doc #43 at 2-3.

On November 24, 2000, plaintiff filed a formal union grievance concerning Ezaz's "continuous harassment" and the negative performance rating plaintiff received from Ezaz. See Doc #28, Ex B. On January 31, 2001, the union invoked arbitration on plaintiff's behalf, Doc #27, Ex C at 56-57, and an arbitration

3

hearing was held concerning plaintiff's grievance one year later. Doc #28, Ex D; Doc #42 at 3.  In the arbitrator's view, plaintiff sought the cessation of Ezaz's harassment and the removal of plaintiff's "minimal satisfactory" rating.  Doc #28, Ex D at 1. The arbitrator's award obliged the prison warden to issue an order requiring that plaintiff be treated fairly and equitably as provided by article 6, section b(2) of the union-prison master agreement.  Id at 2.  The arbitrator also "retained [jurisdiction] for 21 months from January 31, 2002, to hear any future complaints if such complaints have not been resolved through informal attempts through the local union and administration."  Id.  Plaintiff declined to assert any further complaints before the arbitrator. Doc #27, Ex C at 59; Doc #26 at 4.

　　　　Pursuant to the arbitrator's order, on February 14, 2002, then-Warden Michael Benov issued a memorandum directing the managers under him, including Ezaz, to follow the master agreement and treat "all employees fairly and equitably in all aspects of personal management."  Doc #43, Ex C.

　　　　One month later — well within the twenty-one month period during which the arbitrator retained jurisdiction — plaintiff "elected to file her discrimination claims through the EEO procedures."  Doc #43 at 4; Doc #42 at 4.  On April 11, 2002, plaintiff sought EEO counseling and on May 18, 2002, plaintiff filed an EEO complaint.  Id; Doc #26 at 5; Doc #1 at 4.  The EEO counselor's report that issued on May 5, 2002, concerned the alleged harassment and retaliation by plaintiff's supervisor.  Doc #28, Ex F at 2 (noting that plaintiff alleged "[c]ontinuous discrimination and harassment since February 2000, reprisal and

4

retaliation").

On December 2, 2003, the EEOC ALJ dismissed plaintiff's complaint because she "had previously elected the remedy of the union grievance procedure instead of the EEO process." Doc #1 at 4; see also Doc #50, Ex A at 1. The ALJ's decision was implemented by the final order of the Federal Bureau of Prisons on January 13, 2004. Doc #50, Ex A at 1. The EEOC Office of Federal Operations (OFO) subsequently vacated this final order on May 20, 2004, and remanded the case to determine whether the master agreement permitted allegations of discrimination to be raised. Doc #50, Ex A at 1-3. The OFO ordered the Department of Justice (DOJ) to dismiss plaintiff's EEO complaint if she was able to bring her discrimination claims via the grievance forum. Id at 2-3. On July 13, 2004, the DOJ concluded that the grievance process permitted allegations of discrimination and, as a result, dismissed plaintiff's complaint. Id, Ex B at 1-2. On August 3, 2005, the OFO denied plaintiff's appeal concerning the dismissal of her complaint due to untimely filing. Doc #43, Ex K; Doc #48 at 5.

As noted above, defendant terminated plaintiff's employment on November 6, 2003. See Doc #29, Ex A; Doc #42 at 8. On December 5, 2003, three days after the ALJ dismissed her EEO complaint, plaintiff filed an appeal of her termination with the Merit System Protection Board (MSPB). Doc #30, Ex A; Doc #42 at 8. On June 17, 2004, the MSPB ALJ issued an initial decision dismissing the appeal without prejudice to refile due to recent events in the case. Doc #30, Ex B at 1. The MSPB ALJ provided that the appeal would "be deemed automatically refiled" after forty days. Id at 4-5. In plaintiff's opposition to defendant's motion

5

1 for summary judgment plaintiff concedes that she "did not resume
2 the MSPB proceedings."  Doc #42 at 10.

## II

In reviewing a motion for summary judgment, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v Liberty Lobby</u>, 477 US 242, 248 (1986). Further, the dispute over a material fact must be "genuine," that is, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party."  Id.  And the burden of establishing the absence of a genuine issue of material fact lies with the moving party.  <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986).  Summary judgment is granted only if the moving party is entitled to judgment as a matter of law.  FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting its claim that a genuine issue of material fact exists.  <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987).  The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Anderson</u>, 477 US at 255.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id at 249.

//

6

The evidence presented by both parties must be admissible. FRCP 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. Thornhill Publishing Co, Inc v GTE Corp, 594 F2d 730, 738 (9th Cir 1979). Hearsay statements in affidavits are inadmissible. Japan Telecom, Inc v Japan Telecom America Inc, 287 F3d 866, 875 n 1 (9th Cir 2004).

### III

In order to pursue her claims in federal court, plaintiff must first exhaust administrative remedies. Sommatino v United States, 255 F3d 704, 707 (9th Cir 2001). See also Greenlaw v Garrett, 59 F3d 994, 997 (9th Cir 1995) ("In order to litigate a Title VII claim in federal district court, [plaintiff] must have exhausted her administrative remedies"). "Substantial compliance with the presentment of discrimination complaints to an appropriate administrative agency is a jurisdictional prerequisite." Sommatino, 255 F3d at 708. Further, a plaintiff must pursue her administrative remedies with diligence. See Greenlaw, 59 F3d at 997. Abandonment or failure to cooperate in the administrative process prevents exhaustion and precludes judicial review. Sommatino, 255 F3d at 708. The exhaustion requirement applies to both plaintiff's Title VII and Rehabilitation Act claims.

The Civil Service Reform Act of 1978 (CSRA) governs the interplay between collective bargaining agreements in federal employment and statutory employment procedures. 5 USC § 7101 et seq. Under the CSRA, a federal employee who believes she has been discriminated against and whose collective bargaining agreement

7

provides for a negotiated grievance procedure addressing discrimination claims "may raise the matter under a statutory procedure or negotiated grievance procedure, but not both."  See 29 CFR § 1614.301(a); See also <u>Saul v United States</u>, 928 F2d 829, 835 (9th Cir 1991) ("Congress took pains to define the interrelationships between the CSRA's appeal mechanisms * * * [for the] purposes of avoiding duplication and fragmentation of remedies.").  Moreover, an employee's decision to file a written grievance before lodging an EEO complaint is irrevocable.  See 5 USC § 7121(d); <u>Vinieratos v United States Dept of the Air Force</u>, 939 F2d 762, 768 (9th Cir 1991).  Accordingly, judicial review is available to a federal employee alleging discrimination only after she has fully exhausted her administrative remedies in dealing with her grievance.  See <u>Johnson v Peterson</u>, 996 F2d 397, 401 (DC Cir 1993):

> [S]ection 7121(d) requires a federal employee with a pure discrimination complaint to choose between the statutory and the negotiated grievance procedures. The employee who chooses the negotiated procedure may appeal the abitrator's decision to the EEOC. Only after the EEOC has rendered a decision or failed to do so within 180 days may the employee use section 2000e-16(c) and initiate suit in district court.  After the arbitrator ruled against them, [plaintiffs] attempted to bring suit in district court without first appealing to the EEOC.  They failed to exhaust their administrative remedies and, as a consequence, their lawsuit was properly dismissed by the district court.

This exhaustion requirement creates a predicament for an employee who, such as plaintiff here, invokes the grievance procedure but then becomes dissatisfied with the proceedings. Plaintiff dealt with this situation by raising a new legal theory and trying her hand before a different tribunal — the EEOC.

8

Instead of asserting the claims brought before the grievance forum pertaining to article 6, section b(2), which requires the prison to treat its employees fairly and equitably, plaintiff's EEO complaint alleged that Ezaz's conduct amounted to discrimination.

The CSRA does not countenance the dividing of proceedings according to legal theory. When an employee elects the grievance process, and the process allows for allegations of discrimination, the employee "may not thereafter file [an EEO] complaint on the same matter * * * irrespective of whether the grievance has raised an allegation of discrimination within the negotiated grievance procedure." 29 CFR § 1614.301(a). See also Macy v Dalton, 853 F Supp 350, 354 (ED Cal 1994). In determining what constitutes the "same matter," courts look to the facts underlying the claims, not the legal theories asserted. See Macy, 853 F Supp at 354 ("matter" refers to the underlying government employment action); Bonner v Merit System Protection Board, 781 F2d 202, 204-05 (Fed Cir 1986) (same). Hence, the fact that plaintiff's claims in the grievance forum focused on article 6, section b(2), rather than article 6, section b(3)'s prohibition on discrimination, affords plaintiff no end run around the exhaustion requirement as the new claims spring from the "same matter." Doc #42 at 4.

The court in Rosell v Wood, 357 F Supp 2d 123 (DDC 2004), rebuffed a plaintiff's similar efforts to proceed in two forums. In Rosell, the plaintiff, an auditor for the Federal Energy Regulatory Commission (FERC), lodged a written grievance alleging that his negative performance reviews were in retaliation for an "ongoing appeal in a lawsuit regarding his overtime pay * * * against FERC." Id at 27. Then, plaintiff attempted to file an EEO

9

complaint, which FERC's EEO manager denied due to plaintiff's pending grievance.  The court affirmed the EEO manager's decision and rejected plaintiff's contention that he was "entitled to bring separate grievance and EEO complaint actions * * * because his grievance only alleged retaliation, and not age or disability discrimination."  Id at 130.  The court reasoned as follows:

> A side-by-side comparison of [plaintiff's] grievance and complaint show nearly identical language to describe [plaintiff's] alleged injuries.  Moreover, any person investigating his discrimination and retaliation claims would have to evaluate the same set of underlying employment actions.  Although [plaintiff's] grievance and complaint present different legal theories, they are rooted in the same factual nucleus, and therefore, concern the same matter.

Id at 130-31.

Here, as in Rosell, plaintiff's grievance and complaint rest on different legal theories but are rooted in the same factual nucleus and therefore concern the same matter.  The factual allegations plaintiff relied on in her EEO complaint are virtually identical to the allegations in the arbitration forum.  The arbitrator's award of February 5, 2002, makes plain that plaintiff sought relief from Ezaz's harassing behavior and her negative job performance evaluation.  See Doc #28, Ex D.  These events likewise underlie plaintiff's EEO complaint, albeit under the alternative legal theory of discrimination.  See Doc #28, Ex E.  Advancing claims over the same matter in two separate forums is precisely the type of fragmentation that Congress aimed to prohibit when enacting the CSRA.

The EEO ALJ's dismissal of plaintiff's complaint was proper; plaintiff should have exhausted her claims through the

10

grievance procedure. Because plaintiff never properly exhausted her claims, this court lacks subject matter jurisdiction to hear the case. See <u>Vinieratos</u>, 939 F2d at 768-69.

B

The same legal analysis with regard to plaintiff's EEO complaint applies with equal force to plaintiff's MSPB appeal of her termination. Plaintiff's termination letter of November 6, 2003, see Doc #29, Ex A, informed plaintiff of her right to appeal her termination by filing a grievance pursuant to the master agreement, filing an appeal with the MSPB <u>or</u> by filing a formal EEO complaint. Id at 2. The letter stated in pertinent part:

> If you appeal this decision, you must elect to do so under only <u>one</u> procedure. You are considered to have made an election when you timely file, in writing, a grievance under the negotiated grievance procedure, an appeal with the MSPB, or a formal complaint with EEO. Please ensure you elect under which procedure you wish to proceed because, if you file under more than one procedure, the procedure under which you timely file first shall be considered to be your elected procedure.

Id (emphasis in original).

After filing an appeal of her termination with the MSPB on December 5, 2003, plaintiff abandoned the MSPB proceedings. According to plaintiff, she "did not resume the MSPB proceedings * * * [and] elected to continue with her EEO complaint for discrimination which she had commenced earlier on May 18, 2002." Doc #42 at 10. But for plaintiff to rely on the "earlier" EEO complaint is disingenuous: plaintiff filed her MSPB appeal three days after the EEO ALJ <u>dismissed</u> her EEO complaint for failure to exhaust the union-prison grievance procedure. Plaintiff cannot

11

abandon the MSPB proceedings on account of an earlier invalid EEO complaint; she elected the MSPB procedures first and did not exhaust them.

In any event, even if plaintiff selected the EEO process first, plaintiff's subsequent invocation of the MSPB procedures nonetheless triggers an exhaustion requirement.  Once the MSPB determined it had jurisdiction over plaintiff's appeal, plaintiff was obligated to continue down the MSPB track and pursue her discrimination claims before the MSPB.  See McAdams v Reno, 64 F3d 1137, 1142 (8th Cir 1995) (noting that filing of MSPB appeal after filing EEO complaint transformed plaintiff's case into an MSPB mixed case appeal and that plaintiff "was required to exhaust her claims in that forum before filing a civil action").  See also German v Pena, 88 F Supp 2d 222, 225 (SDNY 2000).  As such, plaintiff's abandonment of the MSPB appeal constitutes a failure to exhaust her administrative remedies.  See Greenlaw, 59 F3d at 997 ("A plaintiff may not cut short the administrative process prior to its final disposition, for upon abandonment a claimant fails to exhaust administrative relief and may not thereafter seek redress from the courts").  Consequently, plaintiff's actions have rendered this court without subject matter jurisdiction concerning her claims derived from the termination.  Id.

In the final analysis, plaintiff pursued her claims in three different forums, contravening the CSRA and its aim to avoid the fragmentation of proceedings.  These efforts to take three bites at the proverbial apple preclude the court from having subject matter jurisdiction, as plaintiff exhausted neither her EEO complaint nor her MSPB appeal.  The court's remark in Vinieratos is

12

apropos, "[i]t is not the role of the federal judiciary to straighten out a mess that is the complainant's own doing." 939 F2d at 773. Accordingly, the court lacks subject matter jurisdiction over plaintiff's claims and the court GRANTS defendant's motion.

IV

In sum, the court GRANTS defendant's motion for summary judgment. In addition, plaintiff's motion to strike is DENIED as moot. The clerk is DIRECTED to close the file and TERMINATE all motions.

IT IS SO ORDERED.

_____

VAUGHN R WALKER
United States District Chief Judge

13